**FAGAN et ux. v. TEXAS CO.** (No. 1097.)

(Court of Civil Appeals of Texas. El Paso. March 25, 1920.)

1. Evidence ⬤➡589—Jury need not believe uncorroborated testimony of interested witnesses.

In an action to cancel an oil lease on the ground that the acknowledgment of the lessor's wife was not taken in the manner and form required by law, the jury might find against uncorroborated testimony of the lessor and his wife upon such issue, even though no affirmative evidence was offered by the defendant.

2. Acknowledgment ⬤➡55(1) — Conclusive in absence of fraud or imposition.

A certificate of acknowledgment in due form is conclusive in the absence of fraud or imposition.

3. Banks and banking ⬤➡281—Liquidation did not terminate authority of cashier of national bank to accept tender under oil lease.

Liquidation of a national bank and its consolidation with another bank did not terminate its corporate existence, nor the authority of its cashier to accept tender made by a lessee in an oil lease of a payment to extend the lease; although the deposit was entered in the books of the state bank with which it was consolidated; the business of the national bank not having been entirely wound up, under Rev. St. U. S. § 5220 (Comp. St. § 9806).

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by Jesse Fagan and wife against the Texas Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Callaway & Callaway, of Comanche, for appellants.
Critz & Woodward, of Coleman, for appellee.

WALTHALL, J. By instrument dated December 3, 1917, Jesse Fagan and wife, appellants, leased to the Texas Company 80 acres of land for the purpose of prospecting for oil, gas, and sulphur, and granted and conveyed to said company all the oil, gas, and sulphur in and under the land reserving a royalty interest in the same. The lease contract contains this provision:

"If operations for the drilling of an oil or gas well are not begun on said land on or before the first day of December, 1918, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the credit of the lessor, in the Farmers' & Merchants' National Bank at Comanche, Texas (which shall continue as the depositary regardless of changes in ownership of the land), the sum of ten dollars ($10.00), which payment or tender may be made by the check or draft of the lessee, and, however made, shall operate to confer on the lessee the privilege of deferring the time limit for six months from said date. Thereafter, in like manner and upon like payments or tenders of said amount, the time limit may be further deferred for additional periods of six months successively."

This instrument was signed and acknowledged by the parties thereto, and filed for record in the office of the county clerk.

On February 5, 1919, the lessors filed this suit to cancel and set aside the foregoing lease and conveyance, it being alleged that the land was the homestead of the lessors, and that the acknowledgment of Mrs. Fagan was not taken in the manner provided by law, in that the notary who took the acknowledgment did not examine her and explain the instrument to her privily and apart from her husband, and did not ask her the questions required to be asked in such cases, and that she did not declare to the notary that she had willingly signed the instrument, nor did she state that the same was her act and deed, nor that she did not wish to retract it; all of which was well known to the Texas Company, its agents and representatives, who were present in the same room with the Fagans and the notary and within a few feet of them, and when the instrument was signed and while the notary was purporting to take Mrs. Fagan's acknowledgment, and that the agents and representatives of the defendant knew of the failure of the notary to properly take the acknowledgment of Mrs. Fagan as the law required.

As a further ground of avoidance it was alleged that drilling operations had never been begun upon the land, and the defendant had not paid or tendered to the plaintiffs, and had not paid or tendered to the credit of the plaintiffs, the sum of $10 in the Farmers' & Merchants' Bank at Comanche, Tex., on or before December 1, 1918, wherefore the rights of the company under the lease had terminated.

The case was tried before a jury. The court instructed the jury as follows:

"First. Now if you believe from a preponderance of the evidence that, on or about the 1st day of December, 1918, the $10 rental mention-

ed in the contract in this case fell due, and that the defendant failed to tender the same to the plaintiff, or to the depository named in the lease contract in question in accordance with the provisions thereof, and that the contract with respect to the tender to the plaintiff or rental or the payment to him of the same was breached and broken by the defendant, then, in the event you so find, you will render a verdict for the plaintiff; or, if you believe from a preponderance of the evidence that, on the date that the oil and gas lease in question was executed and signed by the plaintiff and his wife, the property described in plaintiff's petition, or a portion thereof, constituted a homestead of the plaintiff Jesse Fagan and his wife, Susie Fagan, and if you further believe from a preponderance of the evidence that the notary public who took the acknowledgment of Mrs Fagan failed to fully explain the said instrument in question to her, or failed to examine her respecting the execution of said instrument privily and apart from her said husband, or failed to have her acknowledge to him, the said notary, that the same was her act and deed, or failed to have her declare to him that she had willingly signed the same, or failed to have her state that she did not wish to retract it, then, in either event, you will find the acknowledgment in question was not in compliance with the law, and, if the agent of the defendant had knowledge that the notary public in question had omitted to perform the duty incumbent on him with respect to either of the matters last above set forth, and accepted the same with such knowledge on his part of such defect in said acknowledgment with respect to either of the requirements of the law, then, in that event, you will return a verdict for the plaintiff.

"Second. In connection with the last foregoing paragraph of this charge respecting the acknowledgment of Mrs. Fagan, to the instrument in question, you are instructed that, the same being regular upon its face, on the instrument which has been exhibited in evidence herein, the same is presumed to have been regularly taken, and the plaintiff cannot take advantage of any infirmities therein, unless it is proven by a preponderance of evidence that some of the requirements of law, as the same have been submitted to you, were not in fact complied with by the notary public, and unless a preponderance of the evidence establishes the fact that the acknowledgment was defective in one or more of the respects hereinabove submitted to you, you will find for the defendant on this phase of the case.

"Third. You are furthermore instructed that if you find and believe from the evidence that the rental due the plaintiff on December 1, 1918, was tendered to the plaintiff by E. E. Anthony, for and on behalf of the defendant on or before the last-named date, then, in the event you shall so find, you will return a verdict for the defendant on the issue of nonpayment of rentals."

The jury returned a verdict for the defendant, in accordance wherewith judgment was rendered, and the Fagans appeal.

## Opinion.

[1] Under the fourth assignment complaint is made of the refusal of a motion for new trial upon the ground that the verdict and judgment is contrary to the law and evidence, in that the undisputed evidence shows that the land was the homestead of the plaintiffs at the time the instrument was executed, and that the acknowledgment of the wife was not taken in the manner and form required by law, of which facts the defendant, through its agent, had full knowledge. The notary's certificate of acknowledgment is in substantial compliance with the statute. No point in this respect is made by the appellants. The only evidence that the notary did not comply with the statutory requirements in taking the acknowledgment of the wife is the testimony of Mr. and Mrs. Fagan, whose testimony supports the allegations made in the petition. The issue of whether or not the notary performed his duty in taking her acknowledgment was submitted by the court to the jury. Mr. and Mrs. Fagan were interested witnesses, and it was the province of the jury to find against them upon that issue, even though no affirmative evidence had been offered by the defendant showing that the notary did his duty. The jury was not required to believe their uncorroborated testimony. Railway Co. v. Lucas, 148 S. W. 1149; Thomas v. Saunders, 150 S. W. 769; Gonzales v. Adoue, 56 S. W. 548.

But aside from this consideration the notary who took the acknowledgment testified in the case, and his testimony raised an issue of fact as to whether or not the notary complied with the law. Other reasons are set up by the appellee why this assignment of error is not well taken, but it is unnecessary to further consider the matter, as we think the finding of the jury upon this issue is warranted by the evidence.

[2] The certificate of acknowledgment being in due form, it is conclusive in the absence of fraud or imposition, and neither of these are alleged in this case. Hartley v. Frosh and Wife, 6 Tex. 216, 55 Am. Dec. 772; Waltee v. Weaver, 57 Tex. 571; Oar v. Davis, 105 Tex. 479, 151 S. W. 794.

Error is also assigned to the refusal of special charges Nos. 1, 2, and 3, requested by the appellants, and which read:

No. 1. "You are instructed that in this case the undisputed evidence shows that the contract between the plaintiff and defendant provided that the said lease should terminate, unless the defendants, on or before the 1st day of December, 1918, should pay to the plaintiff, or tender to his credit in the Farmers' & Merchants' Bank of Comanche, Tex., the sum of $10, or should begin drilling operations upon the said land; and the evidence further shows without dispute that no such drilling operations or payment, or tender of rental, was made by the defendants to the plaintiff. You are therefore instructed that said lease, by its own terms, has expired, and you will return a verdict for the plaintiff. * * *"

No. 2. "You are instructed that if you should believe from the evidence that the Farmers' & Merchants' National Bank of Comanche, Tex., had gone out of business, and its affairs had been wound up prior to the time the defendant in this case tendered to the said bank the $10 rental due under the lease in question herein, and that said institution was not a going concern, then, in that event, it could not accept the said money, and if you should further believe that no tender or payment of the said $10 was made to the plaintiff in person, you will find for the plaintiff, and so say by your verdict."

No. 3. "You are instructed if you should believe from the evidence that the $10 rental due to the plaintiff herein was deposited to the credit of the plaintiff in the First State Bank of Comanche, Tex., on or before the 1st day of December, 1918, but should further find and believe from the evidence that no other or further tender or payment of the said money was made by the defendant, then you are instructed that such deposit was not a sufficient compliance with said contract, to continue the same in force, and you will find for the plaintiff."

E. E. Anthony testified that the Farmers' & Merchants' National Bank did business in Comanche until the middle of December, 1918. About that time the Farmers' & Merchants' National Bank was consolidated with the First State Bank. Anthony was elected cashier of the Farmers' & Merchants' National Bank to wind up the business of that bank, and was one of its liquidating agents. He further testified:

"The First State Bank gave credit on November 23, 1918, to Jesse Fagan and wife for $10 received through the mail from the Texas Company. It was remitted by draft from the Texas Company which we accepted as cash and credited it as such. I was still cashier of the Farmers' & Merchants' National Bank at that time. I wasn't doing any business in the way of taking deposits, but we were just winding its affairs up. I was cashier for that purpose, and was recognized as such by the federal government. All moneys received and which came into the Farmers' & Merchants' National Bank was taken charge of and deposited in the First State Bank. * * * All of the stock was canceled in October, 1918, but we didn't cancel it absolutely until we got the First State Bank stock increased. It was all canceled before we received this deposit from the Texas Company for Jesse Fagan and wife, and it was deposited in the First State Bank. We had authority from the federal government to consolidate with the Farmers' & Merchants' National Bank." ·

A deposit slip was offered in evidence as follows:

"Deposited for Jesse Fagan and wife by the Texas Company with the First State Bank, Comanche, Texas, 11—23—1918. * * Rentals 80 acres 6 months from 11—30—18."

Under appellant's proposition that it was error for the court to refuse to give the third special charge quoted above, we need to consider only the provision of the lease as to the deposit and the status of the Farmers' & Merchants' National Bank at the time the $10 were paid to Anthony, the cashier of that bank, and by him deposited in the First State Bank, and credit there given to Fagan and wife, under the circumstances as detailed by the witness Anthony. No payment or tender of payment was made of the $10 other than as stated by the witness Anthony.

[3] The court instructed the jury that a payment to Anthony for and on behalf of the Fagans would satisfy the provision in the lease. We think the instruction was not error. The Farmers' & Merchants' National Bank was still in existence as a corporation, and had a cashier in the person of Anthony. Anthony received the check for the $10 deposit on the rental as provided by the terms of the lease. As to where or how the deposit was to be entered was not a part of the undertaking assumed by appellee, its contract having been fully performed when it tendered the $10 check to the cashier of the Farmers' & Merchants' National Bank within the time required by the lease. We think the following authorities support appellee's contention that the liquidation of the Farmers' & Merchants' National Bank did not terminate its corporate existence, nor the authority of Anthony to act as its cashier. U. S. Revised Statutes, § 5220 (Comp. St. § 9806); 6 Fed. Statutes Ann. p. 843, and notes.

In U. S. v. Jewett (C. C.) 84 Fed. 142, and in Jewett v. U. S., 100 Fed. 832, 41 C. C. A. 88, 53 L. R. A. 568, it was held that the liquidation of a national bank does not terminate the official character of its officers. In Merchants' National Bank v. Gaslin, 41 Minn. 552, 43 N. W. 485, it was held that the resolution of the stockholders to go into liquidation, certified to the Comptroller of the Currency, does not dissolve the bank as a corporation, nor affect its capacity to collect its assets and close its affairs.

What we have said above necessarily disposes of appellant's fourth assignment.

Finding no reversible error, the judgment is affirmed.