NEBRASKA NATIONAL BANK v. UNION STOCK YARDS NA-
    TIONAL BANK ET AL., APPELLEES: FREDERICK W.
                    CLARKE, APPELLANT.

FILED APRIL 19, 1922.   No. 21974.

1. Banks and Banking: LIQUIDATION. Where a national bank goes into voluntary liquidation, its corporate existence is preserved for that purpose.

2. ———: ———: OFFICERS: CONFIDENTIAL RELATIONS. Where a

director who is also the cashier of a national bank which goes into voluntary liquidation does not resign either office, he retains his confidential relations to the corporation and its stockholders, in absence of an agreement to the contrary, though his salary as cashier ceases.

3. ——: ——: DUTIES OF CASHIER. Services performed by the cashier of a national bank in collecting and disbursing funds with the consent of the liquidating agent pending voluntary liquidation are not outside the scope of the cashier's duties.

4. ——: ——: CASHIER: COMPENSATION. The circumstances outlined in the opinion *held* not to imply a contract between a liquidating bank or its liquidating agent and the cashier to pay the latter, who is also a stockholder and a director, compensation for services in the work of liquidation.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Brogan, Ellick & Raymond,* for appellant.

*Myron L. Learned* and *E. M. Morsman, Jr.,* contra.

Heard before MORRISSEY, C. J., DAY, DEAN, FLANSBURG and ROSE, JJ.

ROSE, J.

This is a proceeding in the nature of a bill of interpleader. The Nebraska National Bank, plaintiff, alleged that it had in its possession to the credit of the Union Stock Yards National Bank, defendant, a balance of $13,-148.55, and that defendants Engelbert F. Folda and Frederick W. Clarke claimed to be adversely interested in the funds. Upon the filing of the petition plaintiff was ordered to pay the money into court. There was a compliance with the order and plaintiff was discharged from liability for disbursement.

The funds in controversy were deposited in the Nebraska National Bank, plaintiff, to the credit of the Union Stock Yards National Bank, defendant, under the following circumstances: The latter is a liquidating bank. It went into voluntary liquidation January 3, 1911. It did not thereafter transact a commercial banking business,

but its corporate existence was prolonged for the purpose of liquidation. It has a successor with the same name, except that the word "Union" is omitted. The new bank or the successor, named the "Stock Yards National Bank," assumed generally the liabilities of the old or liquidating bank, the Union Stock Yards National Bank, defendant, and accepted most of its assets, but notes and other paper aggregating perhaps $600,000 were not included in the transfer from the old bank to the new. The principal business of liquidation was the collection of the notes and other paper retained by the old bank as its own property. Many of the notes were paid at maturity without question. Others were renewed and subsequently paid. In November, 1911, there were uncollected items aggregating in round numbers $105,000. The adjustment of these items covered a period of several years. Defendant Folda, president of the old bank, became its liquidating agent. He had been appointed by formal resolution of its stockholders December 31, 1910. The resolution provided that, in the event of his death, resignation, or incapacity, his successor, as liquidating agent, should be defendant Clarke. Folda did not die or resign or become incapacitated. He and Clarke were stockholders, directors and salaried officers of both the liquidating bank and its successor. Clarke left the latter November 1, 1913, and became president of the Nebraska National Bank, plaintiff. Both Folda and Clarke performed services in converting into cash assets retained by the liquidating bank. From the proceeds of these assets, after liquidation had run its course, there remained on deposit in the Nebraska National Bank, plaintiff, to the credit of the old or the liquidating bank, the Union Stock Yards National Bank, defendant, a balance of $13,148.55, the funds in controversy.

In an answer to the bill of interpleader the liquidating bank claimed the balance as owner, and pleaded, among other things, that Clarke had no title to or valid claim on the funds.

Clarke filed an answer containing a plea that the funds

are subject to an equitable lien in his favor to the extent of $10,000 for services performed by him in making collections during the course of liquidation under an implied contract for compensation.

Upon a trial of the issues raised by the pleadings, the district court made findings in favor of the liquidating bank, and denied the relief sought by Clarke. The latter has appealed.

The question presented by the appeal may be stated in this form: Do the circumstances imply a contract between the old bank or its liquidating agent and Clarke to pay the latter for his services in making collections? Clarke answers this question in the affirmative and invokes a rule which he quotes thus:

"A director or an officer rendering services outside the scope of his official duties may recover compensation therefor, although not provided for by express contract, if the circumstances are otherwise such as to raise an implied contract." Note to *Goodin v. Dixie Portland Cement Co.,* L. R. A. 1917F (79 W. Va. 83) 308, 319, and cases collected in note, pp. 319, 320.

On the other hand, the liquidating bank takes the view that Folda by express contract was engaged to perform these services, and that there was no implied contract with Clarke. In this connection it is argued that, in absence of an express contract, a director of a corporation is presumed to serve without compensation. *Goodin v. Dixie Portland Cement Co.,* L. R. A. 1917F (79 W. Va. 83) 308, and cases collected in a note on page 311.

Clarke performed services inuring to the benefit of the liquidating bank and its stockholders. This is conceded. He demanded payment of obligations, solicited settlements, and made adjustments; employed clerical help and attorneys; handled large amounts of money; disbursed proceeds in the form of dividends, and paid expenses of liquidation. A belief that he should charge a fee for his services was expressed in writing January 10, 1916, by Folda, the liquidating agent. Clarke's fidelity and skill in per-

forming services are not questioned. A spirit of generosity would suggest the payment of reasonable compensation without a contest. The question, however, arises on the implication of a contract, and the solution requires a view also from the standpoint of the liquidating bank and its stockholders. They exercised their power to appoint a liquidating agent and they selected Folda for that position. This was the final word on that subject from the source of power. The appointment was never revoked or changed or supplemented. Thereafter there was no meeting of the directors. Folda served as liquidating agent during the entire course of liquidation. The services performed by Clarke were generally services which Folda had been appointed to perform. Neither the liquidating bank nor Folda appointed Clarke to any new position in connection with liquidation. Clarke was not directed to reduce assets to money, nor was he promised remuneration. Independently of compensation, he was vitally interested in the assets. He was a heavy stockholder in the old bank and also a director and the cashier. He retained these relations to the end. As cashier of the old bank he handled its funds and kept them temporarily on deposit in the new bank of which he was for a time vice-president. When his salary as cashier of the old bank ceased, his salary as vice-president of the new bank commenced with an increase in amount. The new bank occupied the offices of the old. The assets retained by the old bank remained in the hands of Clarke as vice-president of the new bank and clerical help of the latter was used in the work of liquidation. The old bank remained a corporation. Its officers were the same after the change. As a director of the old bank Clarke was a fiduciary of its stockholders. He was their trustee. As cashier of the old bank he still handled their funds. These relations did not change when liquidation began. Interested as a stockholder in dividends arising from proceeds of the assets and interested in securing these trust funds for temporary deposit in the new bank of which he was vice-president, Clarke did not ask for a.

fee until 1916, a period of five years, though he paid his own expenses of liquidation out of deposits under his control as cashier of the old bank. He never made any record of services or of charges therefor. While paying regular expenses of liquidation he drew personal dividends out of funds collected by him and waited five years before intimating that he expected to be paid for his services. In voluntarily notifying debtors to pay their obligations and in voluntarily receiving and disbursing funds without objections from the liquidating agent, Clarke did not go beyond the scope of his duties as cashier of the old bank under the circumstances, though he might properly have made a timely demand for compensation or have turned the assets and the entire work of liquidation over to Folda. The inference that he was prompted by personal interest in the assets and by his individual and fiduciary relations with both the old bank and the new seems stronger than the implication that the old bank or Folda agreed to pay him for his services. The opportunity to apply on compensation for voluntary services of a trustee trust funds subject to his check is a temptation to which a fiduciary should not be exposed unnecessarily. The better view of the circumstances and of the rules of law and equity applicable to the facts seems to be that Clarke is not entitled to compensation under an implied contract.

AFFIRMED.