### SOUTHWEST NAT. BANK et al. v. FAR-RACY et al.

No. 3321—576.

District Court, N. D. Texas, Dallas Division. June 10, 1931.

Touchstone, Wight, Gormley & Price and Grace Fitzgerald, all of Dallas, Tex., and Bullington, Humphrey & King, of Wichita Falls, Tex., for complainants.

John Davis, of Dallas, Tex., for respondents.

ATWELL, District Judge.

The Southwest National Bank, of Dallas, Tex., in the process of liquidation, 'and Gordon West, its agent, seek an injunction against Harry D. Farracy, trustee of L. H. Lewis Company, bankrupt, and Hal Hood, sheriff of Dallas county, and John Moffitt, and all other deputies of said sheriff, to restrain them from selling certain real property that has been seized under execution issued out of a state court judgment.

All of the parties, plaintiff and defendant, are Texas citizens. Jurisdiction is asserted under section 2 of the Bankruptcy Act (11 USCA § 11), and under subdivisions a and b of section 68 (11 USCA § 108 (a) (b), of said act, on the ground that the judgment recovered by Farracy is subject to an offset for a lesser amount, in the form of a claim proven and allowed in the estate of the Lewis Company; and because the bank is in process of liquidation under and by virtue of the provisions of section 181, title 12 of USCA.

The bank is the successor of the Security National Bank. The latter institution made a loan of $50,000 to the Lewis corporation. Later it made another loan of $50,000 to officers of that corporation. When the bank was in stress, the officers of the bank induced the officers of the Lewis corporation to execute notes of that corporation in lieu of their individual notes for the second $50,000. Later the Lewis corporation went into bankruptcy. The successor of the Security National proved in the bankruptcy proceedings the first $50,000 note, and a remaining balance of $20,000 on the second note. Seventy per cent. dividends have been paid upon those claims. The trustee in bankruptcy, after payment of such dividends, discovered the facts with reference to the substitution of the corporation note for the individual note, and thereupon brought suit in the state court for the payments that had been made thereon as well as for the dividends that had been paid by him upon the remainder thereof. The litigation finally reached the Supreme Court of the state (29 S.W.[2d] 1073), which reversed the judgments of the lower courts, and rendered a decision for him, which aggregates, with interest, the sum of $53,700, and he has secured an execution and levied it upon certain real assets.

It is claimed in the pleadings that the bank has been in the process of liquidating

since 1925. That it has assets of $165,000, and liabilities of approximately $65,000.

The complainants pray that the trustee and the sheriffs levying such execution be restrained.

Our system of government demands the utmost care lest one court impinge upon the territory of another. National courts are not only cautioned by this consideration, but are forbidden by a plain statute to enjoin the state courts. R. S. § 720 (28 USCA § 379). Important exceptions are when it is necessary to preserve and continue jurisdiction or to save from spoilation a national utility. ■ The first ground of jurisdiction urged by the complainant does not seem to be well taken. The affairs of the Lewis corporation are being administered in the bankruptcy court. If the complainants have anything to offer as a set-off, they should seek entry there. Whether there is an obligation to go there or into the court which rendered the judgment against the bank, this court is not, at the present time, called upon to decide. It is certain that there is no right to come here under the present situation. See, also, Tootle-Weakley Millinery Co. v. Billingsley, 74 Neb. 531, 105 N. W. 85; In re Petrich (D. C.) 43 F.(2d) 435; 34 C. J. 701; Cumberland v. DeWitt, 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042; Wallace v. Ohio Bank (C. C. A.) 2 F.(2d) 53.

Secondly, the complainants assert their right to seek an injunction from this court because this court has general jurisdiction to afford such relief by virtue of the laws of the United States.

The elaborate provisions for the incorporation, supervision, and control of national banking associations, include power to issue circulating notes, to go into voluntary dissolution (section 181, 12 USCA), and general grounds for appointment of receivers (section 191, tit. 12, USCA).

Section 5,220 of the Revised Statutes, which is now section 181, of title 12, USCA, provides that, "Any association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock." This provision may be advantaged by either a solvent or an insolvent institution. Green v. Bennett (Tex. Civ. App.) 110 S. W. 108; Planten v. National Nassau Bank, 93 Misc. Rep. 344, 157 N. Y. S. 31, affirmed 174 App. Div. 254, 160 N. Y. S. 297; Planten v. Earl, 220 N. Y. 677, 116 N. E. 1070; see also King v. Pomeroy (C. C. A.) 121 F. 287, generally as to liquidation and receivership.

■ Voluntary liquidation is a preservation of the corporate existence. Nebraska National Bank v. Union Stock Yards National Bank, 108 Neb. 417, 187 N. W. 883; Brown v. Deposit National Bank, 125 Misc. Rep. 247, 211 N. Y. S. 366; Fagan v. Texas Co. (Tex. Civ. App.) 220 S. W. 346; Merchants' National Bank v. Gaslin, 41 Minn. 552, 43 N. W. 483. And the bank continues to exist during the process of liquidation and is capable of suing and being sued for the purpose of winding up its business and until its affairs are completely settled. Central National Bank v. Connecticut Mutual Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Chemical National Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595; Standard Trust Co. of New York v. Commercial National Bank (C. C. A.) 240 F. 303.

The Supreme Court, in Central National Bank v. Insurance Co., 104 U. S. 54, 74, 26 L. Ed. 693, pointed the way to the power of such continuing corporation while thus liquidating. "If there are claims made which the directors of the association are not willing to acknowledge as just debts, there is nothing in the statute which is inconsistent with the right of the claimant to obtain a judicial determination of the controversy by process against the association, nor with that of the association to collect by suit debts due to it."

That course up to this point has been followed by the parties here. See Warner v. Citizens' Nat. Bank (C. C. A.) 267 F. 661. The bank has finally been cast in the litigation and the successful creditor having been unable to realize upon the judgment is pursuing legal steps for its collection. May such an effort be halted?

■ The tangible assets and the potential liability of the stockholders of the liquidating bank is a trust fund in the hands of the liquidating agent for the benefit of creditors. George v. Wallace (C. C. A.) 135 F. 286, affirmed Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738; Merchants' National Bank v. National Bank (D. C.) 231 F. 556.

■ It may be assumed that the government is no longer interested in the outstanding circulation of the bank, since under section 5,222 (12 USCA § 183), the association is required within six months from the date of the vote to go into liquidation, to deposit with the treasury of the United States, lawful money of the United States sufficient to re-

deem all of its outstanding circulation. Six years having passed since this bank so voted and that provision has probably been complied with. But other creditors and the shareholders have the right to rest upon the orderly settlements and conclusion of the business of the association provided for and guaranteed by the national statutes. The fixing of a lien against the assets of the corporation attempted after voluntary liquidation was denied in Merchants' Bank v. National Bank, supra. Section 191 of title 12, USCA, seems to support this thought: "Whenever any national banking association shall be dissolved, and its rights, privileges, and franchises declared forfeited, as prescribed in section 93, or whenever any creditor of any national banking association shall have obtained a judgment against it in any court of record, and made application, accompanied by a certificate from the clerk of the court stating that such judgment has been rendered and has remained unpaid for the space of thirty days, or whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, in either case, appoint a receiver who shall proceed to close up such association, and enforce the personal liability of the shareholders, as provided in section 192." There is no direct negation of the right to collect a judgment after having obtained it, but the remedy offered in this section would seem to be persuasive that the Congress intended that the course here outlined should be followed. The relief is speedy, effective, and prevents the securing of advantage. The entire body of assets drawn together in the liquidation remains responsive to the charge of every creditor, and the liability of the shareholders is an added bulwark. The courts treat voluntary liquidation as a form of assignment, not in the sense that the institution is insolvent, always, or unable to meet its obligations, but in the sense that such a course saves all that is available in law, for creditors, and presents a satisfactory method for the distribution of the balance among the shareholders. Such a course would be thwarted if creditors were permitted to secure priorities or liens, or if they could dissipate by execution sales.

A restraining order may be drawn, without prejudice to the right of the trustee to proceed in a statutory way either in court or through the comptroller.