**METROPOLITAN SAVINGS BANK & TRUST CO. OF PITTSBURGH, PA., v. FARMERS' STATE BANK OF ROSALIE, NEB., et al.**

Circuit Court of Appeals, Eighth Circuit.
July 23, 1927.

No. 7734.

**1. Banks and banking ⬥15—State bank, operated as "going concern" by guaranty fund commission, held not immune from suit on certificate of deposit (Laws Neb. 1925, c. 30, §§ 1, 4; Comp. St. Neb. 1922, §§ 7982, 8024, 8027; § 8028, as amended by Laws 1923, c. 191, § 26).**

State bank, organized under Nebraska laws, operated as a "going concern" by the guaranty fund commission under Laws Neb. 1925, c. 30, §§ 1, 4, receiving and paying deposits, making loans, and doing all other acts pertaining to the business of a going bank, and charter of which was never forfeited, *held* not immune from being sued on certificate of deposit issued by it, because operated by agency of state, in view of Comp. St. Neb. 1922, §§ 7982, 8024-8027, and section 8028, as amended by Laws 1923, c. 191, § 26; presumption being that term "going concern" was used in its ordinary acceptance, which is repugnant to idea that corporation ceased to exist.

**2. Banks and banking ⬥15—State statutes held not to prohibit suit against bank operated as "going concern" by guaranty fund commission (Laws Neb. 1925, c. 30, §§ 1, 4, 5).**

Laws Neb. 1925, c. 30, § 4, providing for operation of bank by guaranty fund commission as a "going concern," without any provision changing or taking away any liabilities or powers previously possessed by bank, *held* not to prohibit actions against the bank on its dishonored obligations while it is so operated; section 1 providing that commission shall con-

duct affairs of bank and retain possession of its assets for sufficient time to make examination of its affairs and dispose thereof as provided by law, requiring commission within reasonable time to determine whether to operate bank as "going concern" under section 4, or to liquidate it through receivership under section 5, and, only during such preliminary period are bank's assets immune from execution or attachment, even if statute be construed as prohibiting enforcement of judgment by execution of attachment during entire period of operation of bank as a "going concern."

**3. Corporations ⬥559(6)—Appointment of receiver does not prevent actions against corporation, except as such actions are enjoined, or as they affect receiver's possession.**

Corporate existence of corporation is not affected by the appointment of a receiver of its property, and corporation remains subject to actions at law to the same extent as if no receiver had been appointed, except as such actions may be restrained or enjoined in receivership proceedings, and no action can be maintained in any way affecting or embarrassing receiver in the possession of the property of the corporation to which his receivership entitles him.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by the Metropolitan Savings Bank & Trust Company of Pittsburgh, Pa., against the Farmers' State Bank of Rosalie, Neb., and others. Judgment for defendants and plaintiff brings error. Reversed and remanded, with directions.

William C. Dorsey, of Omaha, Neb. (H. Malcolm Baldrige, of Omaha, Neb., on the brief), for plaintiff in error.

Charles M. Skiles and Ernest B. Perry, both of Lincoln, Neb., for defendants in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

MOLYNEAUX, District Judge. This is a suit brought by plaintiff in error, hereinafter referred to as "plaintiff," against the Farmers' State Bank of Rosalie, Neb., a corporation, et al., defendants in error, hereinafter referred to as "defendants," to recover on a certificate of deposit, dated July 12, 1924, for $5,000, bearing interest at the rate of 5 per cent. per annum, made and delivered by the defendant Farmers' State Bank, to the Metropolitan National Bank of Pittsburgh, Pa., and assigned by it to plaintiff.

The plaintiff filed its petition in the court below on April 28, 1926. At that time the defendant bank was being operated as a "going concern" by an agent of the guaranty

fund commission of the state of Nebraska, and had been so operated since April, 1925. The only party defendant was the Farmers' State Bank of Rosalie, Neb. Summons was first served upon W. G. Barbour, the agent of the guaranty fund commission, then operating the bank as a "going concern"; but, objections to the jurisdiction having been filed by C. M. Skiles, general counsel for the commission, signing as attorney for the defendant bank, an alias summons was issued and served upon the president of the bank.

Mr. Skiles, on behalf of the guaranty fund commission, then filed a motion to dismiss the action on the ground that, since April 23, 1925, the bank had been in the possession and under the management and control of the commission, which was an agency of the state of Nebraska; that the action was, in effect, against the state, which could not be sued without its consent; and that such consent had not been given.

The motion was sustained by the court below on November 18, 1926, and the action was thereupon dismissed by the court. Thereafter a motion was filed by the plaintiff in error to set aside the order of dismissal, and upon the hearing of this motion the court permitted two additional affidavits to be filed and considered; but on December 11, 1926, the court entered an order adhering to its previous ruling. The case is here on writ of error.

The assignments of error may be summarized as follows:

(1) The action was against the Farmers' State Bank of Rosalie, Neb., a corporation, defendant. Neither the state of Nebraska, nor any officer, agent, or agency of the state, was joined as a defendant. It was not, directly or indirectly, an action against the state, and the court erred in so holding, and in applying the rule that this action cannot be maintained, because the state had not consented to be sued.

(2) The court erred in holding that the statutes of Nebraska, prescribing the powers and duties of the guaranty fund commission in relation to state banks, forbid the maintenance of actions against a banking corporation while the bank is being operated by the commission as a "going concern."

(3) If the state law, properly construed, forbids the maintenance of suits against a bank while being operated by the commission as a "going concern," the law, as so construed, ought not to be enforced, because it is violative of the constitutional rights of the plaintiff in error under both the state and federal Constitutions, and the court erred in giving effect thereto.

The statutes of Nebraska applicable to the issues are as follows:

"Sec. 7982, Comp. St. Neb. 1922: The department of trade and commerce shall have general supervision and control of banks and banking under the laws of this state and no person or persons shall be permitted to engage in or transact a banking business save corporations having complied with the provisions of this article. Said department of trade and commerce shall succeed to all the rights, powers, duties and responsibilities of the state banking board as now existing and as such shall be entitled to all the records, books, files and papers thereof, and shall exercise all the powers and discharge all the duties of such board under the laws of this state."

"Sec. 8024, Comp. St. Neb. 1922: For the purpose of providing a guaranty fund for the protection of depositors in banks, every corporation engaged in the business of banking under the laws of this state, shall be subject to assessment to be levied, kept, collected and applied as hereinafter provided: Provided, such guaranty fund assessed against co-operative banks shall be kept separate and apart from that assessed against commercial and savings banks, and shall be known and referred to as 'co-operative bank protective fund' and shall be applied solely to the benefit of the depositors in co-operative banks who shall be limited to the benefit of such guaranty fund which shall be levied and applied in all respects and manner as the guaranty fund required of commercial and savings banks. The term guaranty fund or depositors' guaranty fund as used in this article shall, when having reference to co-operative banks, be designated, called and construed to mean 'co-operative bank protective fund.' "

"Sections 8025 to 8028, inclusive, provide the method of assessments upon state banks to create and maintain the guaranty fund. It is made up entirely of contributions by state banks in proportion to their deposits, and the contribution of each bank is limited to a fixed percentage of its deposits. Section 8028 was amended in 1923 (chapter 191, p. 452, § 26, Sess. Laws 1923) with respect to the percentage of contribution in case the fund shall become depleted.

"Sections 1 to 7, inclusive, of chapter 191, Sess. Laws of 1923, created the guaranty fund commission, and provided for its organization and general powers. The state was divided into seven banking groups, and from each of these groups the Governor was directed to appoint one member of the commission, who was required to be an executive officer of

some state bank in active service as such for the preceding five years. These appointees of the Governor remained in office only for a few months, until meetings of the state bankers could be held in each group, at which three state bankers were selected, and the Governor was required to appoint the permanent members of the commission from the individuals thus designated by the state bankers. The secretary (head) of the department of trade and commerce was ex officio chairman of the commission. The compensation and expenses of the commission were paid by an additional assessment upon the state banks.

"Sections 1, 4, and 5 of chapter 30 of the Session Laws of 1925 provide the method by which, and the conditions under which, a state bank may be taken over by the department of trade and commerce and placed in charge of the guaranty fund commission, and what the commission may do with such bank thereafter, either through operation of a 'going concern' or liquidation by means of court procedure."

"Section 1. *Banks, When Taken Over.* Whenever it shall appear to the department of trade and commerce, from any examination or report provided for by this article, that the capital of any corporation transacting a banking business under this article is impaired, that such corporation is conducting its business in an unsafe or unauthorized manner, or is endangering the interests of its depositors, or upon the failure of such corporation to make any of the reports or statements required by the provisions of this article, or if the officers or employees of any bank shall refuse to submit its books, papers and affairs to the inspection of any examiner, or if any officer thereof shall refuse to be examined upon oath touching the affairs of any such bank, or if from any examination or report provided by law, the department of trade and commerce shall have reason to conclude that such bank is in an unsafe or unsound condition to transact the business for which it is organized, or that it is unsafe and inexpedient for it to continue business, or if any such bank shall neglect or refuse to observe any order of the department of trade and commerce, such department may forthwith take possession of the property and business of such bank, and place it in charge of the guaranty fund commission, who shall thereafter conduct the affairs of said bank, and who shall retain possession of all money, rights, credits, assets and property of every description belonging to such bank, as against any mesne or final process issued by any court against such bank or corporation whose prop-

erty has been taken, and may retain such possession for a sufficient time to make an examination of its affairs, and dispose thereof as provided by law. Any attachment lien against such property, acquired within thirty days next preceding the taking of such possession, shall be thereby released and dissolved."

"Section 4. *Commission, Powers, Duties.* Upon taking possession of the property and business of any bank, the guaranty fund commission may take charge and control of the property and business of such bank and open it and manage it as a going concern, without regard to its solvency, and through employees, perform all duties and acts of the officers and directors of such bank while managing the same, and all salaries and expenses in connection therewith shall be paid by the bank. The operation of the bank by the guaranty fund commission shall in no manner relieve or diminish the obligations of the stockholders under the laws of this state, or in any manner absolve the owners of such stock or the officers or directors of any liability under the civil or criminal laws of the state. If the guaranty fund commission shall determine that it is impossible to preserve such institution as a going concern, then the commission shall proceed to liquidate such bank as by law provided: Provided, the district court of the district in which such bank is located, may, upon application of any judgment creditor, after a period of three months from the taking over of said bank by the guaranty fund commission, order the commission to close said bank, and liquidate the same, as provided by law.

"Section 5. *Banks, Dissolution.* If at any time after the guaranty fund commission shall have so taken possession of the property and business of any bank, the guaranty fund commission shall determine that it is impossible to preserve such institution as a going concern, then the guaranty fund commission shall communicate the facts to the Attorney General, who shall thereupon cause an application to be made to the district court of the county where such corporation maintained its bank, or to a judge of such court anywhere within his judicial district, for an order directing the guaranty fund commission to take charge of the business, assets and property of every kind of said corporation, and to wind up its affairs. If the judge of the district court of the county where such application is to be made, be absent therefrom at the time such application is to be made, any judge of the Supreme Court may act, but all proceedings in relation to such receivership thereafter

shall be had before the district court, or a judge thereof, who might have directed such commission in the first instance, and the petition and the order shall be forthwith transmitted to the clerk of such court. The court may proceed to hear such application upon giving notice thereof to the president and secretary, or cashier or a majority of the board of directors, or if said officers or directors shall enter the appearance of the bank in the action and consent to a hearing thereon without other notice: Provided, however, notice of such application may be served on all of the stockholders of such bank by posting a notice thereof on the front door of said bank and by publication for one week in a newspaper in the county where such bank is located. Such notice shall state the purpose of the application, and the date on which a hearing will be had thereon. Upon the hearing on said application, if the court shall find from the facts presented, that such corporation is insolvent, or that it has violated any of such provisions of law as would authorize the department of trade and commerce to take possession of the business and affairs of such bank, then the court shall enter a decree stating its finding therein, and directing the guaranty fund commission to proceed to liquidate the affairs of such bank as provided by law through a receiver to be named and appointed by such commission."

[1] 1. The suit, as instituted in the district court, is an ordinary action at law to recover on a certificate of deposit given by the Farmers' State Bank of Rosalie, Neb., a corporation engaged in the banking business and incorporated under the laws of Nebraska. The defendant bank was named in the petition as the sole defendant and the summons in the action was served upon its president. At the time the action was commenced and the summons was served, the bank was being operated as a "going concern" by the guaranty fund commission under section 4, c. 30, Session Laws of Nebraska 1925, hereinbefore quoted.

Possession of the bank was taken by virtue of section 1, chapter 30, Session Laws of 1925, which provided that under certain conditions indicating the unsoundness of the bank, the department of trade and commerce may "take possession of the property and business of such bank, and place it in charge of the Guaranty Fund Commission," which is authorized "to retain such possession for a sufficient time to make an examination of its affairs, and dispose thereof as provided by law."

Having so taken possession of the bank for the purpose of making an examination of its affairs and disposing thereof, as provided by law, the commission is required by sections 4 and 5, chapter 30, Sess. Laws of 1925, to adopt either of two ways to "dispose thereof as provided by law." It may, under section 4, "open it and manage it as a going concern, without regard to its solvency, and, through employees, perform all duties and acts of the officers and directors of such bank while managing the same." Or, if the commission "shall determine that it is impossible to preserve such institution as a going concern," section 5 requires the guaranty fund commission to communicate the facts to the Attorney General, and it then becomes the duty of that officer to apply to the court for the appointment of a receiver.

In the case at bar the commission adopted the first of these alternative courses, and ever since April 23, 1925, has been operating the defendant bank as a "going concern," receiving and paying deposits, making loans, and doing all other acts and things pertaining to the business of a going bank. In using the term "going concern" the Legislature must be presumed to have used it in its ordinary acceptation, which is repugnant to the idea that a banking corporation ceased to exist, or went out of business, when the management thereof was taken over by the commission. It is apparent that the idea of the Legislature was that it should not go out of business, but the corporation should still exist and be managed by a new set of managers, namely, the commission, in the hope that with its added advantages it could overcome the financial difficulties in which the bank was involved and finally turn it back to the management of its own officers. The commission had an advantage over the management of the bank by its own officers. It was provided with additional funds to keep the bank going.

To facilitate and make such new management effective for its purpose, it is provided by section 27, chapter 191, of the Session Laws of Nebraska of 1923, that when a bank has been turned over by the department of trade and commerce to the guaranty fund commission, and such commission desires money to use in conducting the affairs of such bank, the department of trade and commerce shall immediately levy an assessment and draw upon the bankers' conservation fund (a separate fund) and turn the same over to the guaranty fund commission in charge of the bank, to be used as a deposit and for no other purpose. This section further provides:

"The department of trade and commerce or the guaranty fund commission may close said bank at any time for the purpose of liq-

uidation as provided by law, or may return the management of its affairs to its proper officers whenever such deposit, with interest at the rate of five per cent. per annum, has been fully paid to the bankers' conservation fund, and the reason for retaining the management and control thereof no longer exists."

The charter of the bank has never been forfeited. The status of the corporation has never been changed. The officers of the bank still hold the corporate offices to which they were elected by the stockholders, although temporarily relieved of authority and activity during the period of the management of the bank by the commission. The bank is not put in process of liquidation by a receivership or otherwise. There has been no sequestration of its property for the benefit of its creditors; there was a temporary sequestration of the property of the bank in the hands of the commission, until the commission could determine which of the two courses it would pursue, namely, to liquidate the bank or to continue it as a going concern under the management of the commission, but the period of that temporary sequestration has passed and had passed at the time this suit was commenced. The new management then operated the bank as a "going concern." The ownership and title to the assets of the bank still remained in the banking corporation undisturbed by receivership or otherwise. By taking over the management of the bank through an agency of the state, the character of the bank was not changed. The state assumed the character of the corporation it was managing.

As said in the case of Bank of the United States v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L. Ed. 244:

"Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted."

The mere fact that an agency of the state is, under the law of the state, placed temporarily in management of the bank in the place of the bank's officers, does not constitute the banking corporation an arm or agency of the state, or entitle it to claim immunity from suit on the theory that it is identical with the state. The action is against the corporation; neither the state nor any department of the state are, made a party; nor were they necessary parties, nor proper parties, to the action. The judgment to be rendered in the suit is to be satisfied out of the property of the corporation. The suit is not directly or indirectly an action against the state. Bank of United States v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L. Ed. 244; Bank of Kentucky v. Wister, 2 Pet. 318, 7 L. Ed. 437; Darrington v. Bank of Alabama, 13 How. 12, 14 L. Ed. 30; Curran v. State of Arkansas, 15 How. 304, 14 L. Ed. 705; Sargent County v. State, 47 N. D. 561, 182 N. W. 270; Briscoe v. Bank of Kentucky, 11 Pet. 257, 9 L. Ed. 709; Western & A. R. Co. v. Carlton, 28 Ga. 180; Gross v. Managers of World's Columbian Exposition, 105 Ky. 840, 49 S. W. 458, 43 L. R. A. 703; 36 Cyc. 919.

In Bank of United States v. Planters' Bank of Georgia, supra, the Planters' Bank was sued upon certain notes and entered a plea to the jurisdiction of the court, on the ground that the state of Georgia was one of the members or corporators of the defendant. Chief Justice Marshall, in the opinion, said:

"The suit is against a corporation, and the judgment is to be satisfied by the property of the corporation, not by that of the individual corporators. The state does not, by becoming a corporator, identify itself with the corporation. The Planters' Bank of Georgia is not the state of Georgia, although the state holds an interest in it. It is, we think, a sound principle, that, when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted. Thus, many states of this Union who have an interest in banks, are not suable even in their own courts; yet they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation, than are expressly given by the incorporating act. * * * We think, then, that the Planters' Bank of Georgia is not exempted from being sued in the federal courts by the circumstance that that state is a corporator."

In Bank of Kentucky v. Wister, supra, the Bank of Kentucky was sued upon a certificate of deposit which it had refused to pay in gold or silver, and it entered a plea to the jurisdic-

tion, based upon the fact that the entire capital stock of the bank was exclusively and solely the property of the state of Kentucky, and therefore the bank could not be sued. It was held, on the authority of the Planters' Bank Case, that although the state had an interest—even as sole proprietor—in the stock of the bank, that fact would not clothe the bank with the sovereign character of the state, so as to exempt it from suit; and, furthermore, the body corporate against which the suit was brought was entitled "the President and Directors of the Bank of the Commonwealth of Kentucky," which was its legal designation under incorporating act, and the state was not, and could not be considered, a party to the suit.

In the Kentucky Case the state had the entire ownership of the bank and could therefore designate its officers and managers. In the case at bar, the state had no interest whatever in the bank, but had the authority to designate the present management of the bank. Undoubtedly the state could take temporary possession of the bank for the purpose of determining whether or not it should be liquidated, and for the time being sequester the assets of the bank in its hands until that question could be determined, but having determined that question and decided that it would not liquidate the bank but would continue it as a "going concern," the period of the sequestration of the assets ceased. The state had no proprietary interest in the defendant bank. A state agency, the guaranty fund commission, is merely running it temporarily as a "going concern" under its corporate name, and without terminating its corporate existence.

If, as has been held by the Supreme Court, the entire ownership of a banking corporation by the state will not invest it with the sovereign character of the state, and thereby enable it to claim immunity from suit, it follows that the temporary operation of the bank through a state agency, without disturbing its corporate existence or identity, would not have that effect.

In Sargent County v. State, 47 N. D. 561, 182 N. W. 270, the question arose whether the Bank of North Dakota, which was owned, controlled, and operated by the state, was subject to garnishment of its funds deposited in other banks, the same as any other corporation. Sargent county had instituted the action against the Bank of North Dakota to recover judgment for $125,000, and had garnished the funds of the defendant bank on deposit with a number of national and state banks. It was contended that the Bank of

North Dakota was identical with the state; that it was an integral part of the state, an arm of the sovereign power; and that an action against it was an action against the state. In the opinion the Supreme Court of North Dakota, after a full review of the authorities, reached the conclusion that the bank was distinct from the state, so far as its corporate functions and liabilities were concerned, and that its ownership and operation by the state did not render it exempt from suit.

We are satisfied that the order of the court below, dismissing the action of the plaintiff in error, cannot be justified upon the theory that the defendant bank was, because of its operation by the guaranty fund commission, an arm or agency of the state, and therefore clothed with the state's immunity from suit.

[2] 2. An examination of the statute satisfied us that it was not the purpose of the Legislature, in enacting the statutes of Nebraska pertaining to the taking charge of and operating of banks by the commission, to forbid the maintenance of suits against a bank being operated by the commission as a "going concern."

We have before pointed out that there are two courses open to the guaranty fund commission after taking possession of the bank under the statute. One course is to "open it and manage it as a going concern, without regard to its solvency, and through employees perform all duties and acts of the officers and directors of such bank while managing the same," or, if the commission "shall determine that it is impossible to preserve such institution as a going concern," section 5 requires the commission to communicate the facts to the Attorney General, and it then becomes the duty of such officer to apply to the court for the appointment of a receiver.

The status of the banking corporation while being operated by the commission as a "going concern" differs completely from the status of a bank in receivership. In the latter case the bank is in process of liquidation, either by judicial action or by virtue of statutory authority. In the former case the bank continues in business as usual, receiving deposits, paying checks drawn against it, making new loans, renewing old ones, assuming new liabilities, discharging old ones and in every way carrying on its business in the usual manner and with the right to do everything exactly as it could have done before it was put under the management of the commission.

The statute in question puts no limitation whatever on the term "going concern." The law nowhere intimates that it is not to sue

or be sued as any other going concern. In no way is it differentiated from any other "going concern." No powers previously possessed are taken from it. It is clothed with all of the attributes and responsibilities it previously possessed, among the most important and essential of which is the power to sue and the liability to be sued.

Section 1, chapter 30, Sess. Laws of 1925, in authorizing the department of trade and commerce to take over a bank when "in an unsafe or unsound condition," provides that the department, after taking possession of the bank, shall "place it in charge of the guaranty fund commission, who shall thereafter conduct the affairs of said bank, and who shall retain possession of all money, rights, credits, assets and property of every description belonging to such bank, as against any mesne or final process issued by any court, * * * and may retain such possession for a sufficient time to make an examination of its affairs, and dispose thereof as provided by law."

In our view, the plain meaning of this provision is that, when the commission first takes charge and possession of a bank, it is merely preliminary, for the purpose of making an examination and "disposing of the bank as provided by law," which means that the commission must, within a reasonable time, make its choice whether to operate it "as a going concern" or to liquidate it through a receivership. During this preliminary phase, while determining which course to adopt, the commission is empowered to hold possession of the money and property of the bank, "as against any mesne or final process issued by any court." The assets of the bank are, during that period, sequestered in the hands of the commission, and while so sequestered are immune from being taken by any creditor on execution or attachment.

The statute does not expressly or impliedly provide that the property of a bank in charge of the commission shall be protected from such "mesne or final process" after the first phase of the commission's possession of such bank shall have terminated; and after the commission has determined to "open it and manage it as a going concern."

We think such construction would be repugnant to the general conception of the term "going concern." Assuming, however, without conceding, that the statute should be construed to mean that, when a bank has been taken over by the department of trade and commerce and placed in charge of the guaranty fund commission, its property continues to be so protected against "mesne or final pro-

cess issued by any court" during the entire period that the bank shall remain in charge of the commission, including the final period of its operation as a "going concern," it would not follow that, in the meantime, an action could not be maintained against it to recover judgment on a dishonored obligation.

The immunity provided by the statute does not relate to the recovery of a judgment, but to the enforcement of a judgment. While it might not be lawful to levy an execution on the property of the bank while in charge of the commission, that does not mean that a creditor would be denied the right to bring suit and have his cause of action adjudicated.

The agency of the state in charge of the bank as a "going concern" is not a receiver in any accepted sense of that term. It is not made a receiver, either by court action or by statute. It is under no court or statutory direction to wind up the bank's affairs, collect and dispose of its assets, and apply the proceeds ratably in discharge of its debts. There is a provision in the National Banking Law whereby the Comptroller of the Currency is empowered to appoint a receiver for a national bank without applying to the court, and there is statutory authority in some of the states authorizing the banking department to take over the administration of an insolvent bank and liquidate it, without court action. But the agent in charge of a state bank being operated as a "going concern" by the commission under the Nebraska law differs essentially from either of these instances of receivership.

There is no analogy between the situation created under the Nebraska law by the operation of a bank as a "going concern," by an agency of the guaranty fund commission, and the winding up and liquidation of a national bank by a receiver appointed by the Comptroller of the Currency. We know of no reason why a bank in process of operation as a "going concern" under the Nebraska law would be more immune from being sued than a national bank while in process of liquidation through a receiver. First National Bank of Bethel v. Pahquioque Bank, 81 U. S. (14 Wall.) 383, 400, 20 L. Ed. 840, 844. There the court said:

"Beyond doubt the appointment of a receiver supersedes the power of the directors to exercise the incidental powers necessary to carry on the business of banking, as the receiver is required to take possession of the books, records, and assets of every description of the association, and from that moment the association is forbidden to pay out any of its notes, discount any notes or bills, or otherwise

prosecute the business of banking, but the corporate franchise of the association is not dissolved, and the association, as a legal entity, continues to exist."

In Chemical National Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595, the contention was made that the appointment of a receiver amounted to the dissolution of a banking corporation, and that consequently a judgment could not be rendered against it. The court said:

"Granting that, in the absence of statutory provision to the contrary, suits cannot be maintained and judgments rendered against corporations whose chartered existence has terminated, it is not pretended in this case that that event had taken place by lapse of time, by judicial proceedings, or otherwise, unless, as is insisted, the appointment of a receiver in itself put an end to the bank as a corporate entity. The general rule is that the legal existence of a corporation cannot be cut short in this way, and we can find nothing in the statutes in relation to insolvent national banks which gives that effect to such an appointment or justifies any distinction in that regard as between them and other insolvent corporations."

In Central National Bank v. Connecticut Mut. L. Ins. Co., 104 U. S. 54, 26 L. Ed. 693, the court said':

"It is clearly, we think, the intention of the law that it [the banking corporation] should continue to exist, as a person in law, capable of suing and being sued, until its affairs and business are completely settled."

See, also, Merchants' Nat. Bank v. National Bank of Lillington (D. C.) 231 F. 556; Moss v. Goodhart (D. C.) 209 F. 102, to the same effect.

[3] The rule is stated in 8 A. L. R. 442, as follows:

"As suggested, where a receiver is appointed to take charge of the whole or a portion of the property of a corporation for some specific purpose, the corporate existence of the corporation is not thereby affected, and it remains subject to actions at law to the same extent as it would if no receiver had been appointed for its property. Such appointment does not affect the progress' of pending actions or the commencement of actions against the corporation, except as such actions may be restrained or enjoined in the receivership proceedings, and with the further exception that no action can be maintained which will in any way affect or embarrass the receiver in the possession of the property of the corporation to which his receivership entitles him."

As stated before, there is no analogy between the situation created under the Nebraska law by the operation of a bank as a "going concern" through an agent of the guaranty fund commission and a receivership proceeding. The authorities are to the effect, however, that, even if the agent of the guaranty fund commission in charge of the bank and operating it as a "going concern" is to be regarded as a species of receiver, his status as such would not have the effect of terminating its corporate existence, or of depriving a creditor of the right to maintain an action against the bank.

No injunction has been or could be issued in this case to prohibit the action from being maintained. No reason exists why the plaintiff in error should be denied the right to prosecute its action. We think the dismissal of the case by the lower court was erroneous.

As we construe it, the Nebraska statute does not prohibit the maintenance of this action, and, taking that view of the case, it is unnecessary for us to consider the further contention of plaintiff in error that, if construed to deprive the plaintiff in error of its right of action, the Nebraska statute authorizing the guaranty fund commission to take charge of and operate state banks is, to that extent, unconstitutional.

We think the judgment of the court below should be and is reversed, and the cause remanded, with direction to proceed with it in the usual course.