### HIATT v. WARREN et al.
No. 5952.

Circuit Court of Appeals, Fifth Circuit.
Oct. 28, 1930.

Rehearing Denied Dec. 5, 1930.

Sam S. Bennet, of Albany, Ga. (H. A. Peacock and Sam S. Bennet, both of Albany, Ga., on the brief), for appellant.

S. B. Lippitt, of Albany, Ga., for appellees.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, as the receiver of the New Georgia National Bank, brought this suit against the three appellees and other persons on three instruments purporting to be promissory notes, each for $4,166.66, signed by them and made payable to Citizens' First National Bank of Albany, Ga. (herein called the Citizens' Bank), or order; the appellant alleging that those instruments were assigned and transferred by the Citizens' Bank to the Georgia National Bank, and by the Georgia National Bank to the New Georgia National Bank. Each of those instruments contained the following: "Second lien on the Whitehill Plantation in Dougherty County, Ga., consisting of 2500 acres owned by Foy & Shemwell, writing covering same being attached hereto and made a part of this note."

The appellees set up as defenses to the suit: (1) That said notes, after being signed by appellees, were handed to T. E. Fletcher, a National Bank Examiner, and received by him with the understanding that they were not to be delivered to the payee or its liquidating agent, the Georgia National Bank, until a second lien on the Whitehill plantation in Dougherty county, Ga., consisting of 2,500 acres owned by Foy & Shemwell, was attached and made a part of those notes, and that, without the happening of that event, Fletcher, in violation of his agreement, which was known to the payee and to the Georgia National Bank, delivered the notes to the latter as liquidating agent of the Citizens' Bank, and that the New Georgia National Bank acquired the notes with actual knowledge of such agreement and of the violation thereof, and (2) that the payee of the notes received the collateral security mentioned therein, the value of which security was sufficient to pay and satisfy said notes, and that the payee, at the request of its liquidating agent, but without the consent of the makers of the notes, relinquished that security by canceling it. There was evidence to the following effect: The Citizens' Bank suspended business and closed its doors on February 13, 1924. Within a day or two afterward the Comptroller of the Currency took charge of its affairs, sending T. E. Fletcher, a national bank examiner, to Albany for that purpose. No receiver of the Citizens' Bank was appointed. During several months officers and directors of the Citizens' Bank conducted negotiations in efforts to get another bank to take over the assets of the Citizens' Bank and to liquidate its affairs. Mr. Fletcher co-operated with the parties to those negotiations. In June, 1924, the Georgia National Bank agreed to take over the assets of the Citizens' Bank and to guarantee the payment of its depositors, and that there would be no assessment against its stockholders, a consideration for the Georgia National Bank so agreeing being that named stockholders and directors of the Citizens' Bank were to deliver to the Georgia National Bank a stated amount in cash and were to give notes for amounts aggregating $12,500, such notes to be secured by a second lien on the Whitehill plantation, in Dougherty county, Ga., consisting of 2,500 acres owned by

Foy & Shemwell, who at the time the Citizens' Bank closed its doors owned 826 of the total of 2,000 shares of its capital stock. Officers and directors of the Citizens' Bank acted for it in making that agreement, in pursuance of which the instruments sued on were signed. There was evidence tending to prove the defenses set up. T. E. Fletcher was dead at the time of the trial.

The appellant assigns as error the action of the court in overruling objections to testimony of one of the appellees to the effect that after the instruments sued on were signed they were handed to Mr. Fletcher, who agreed that he would obtain the stipulated second lien on the Whitehill plantation before delivering the notes to the Georgia National Bank, the liquidating agent of the Citizens' Bank. For support of the just mentioned objections, appellants rely on provisions of the Georgia statute that, "where any suit is instituted or defended * * * by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the * * * deceased person, as to transactions or communications with such * * * deceased person, whether such transactions * * * were had by such * * * deceased person with the party testifying or with any other person. * * * Where any suit is instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation." Georgia Civ. Code, 1926, § 5858, subds. 1, 3. The testimony objected to was not violative of either of the just set out statutory provisions. The record does not show that any party to this suit was an indorsee, assignee, transferee, or the personal representative of a deceased person, or that the transactions or communications deposed to were solely with a deceased officer or agent of a corporation which was a party to the suit. The transaction of which the instruments sued on were a part was between the Citizens' Bank and the Georgia National Bank. That transaction was not one between the Comptroller of the Currency, or his representative, Mr. Fletcher, and the Georgia National Bank, because of the fact that at the time it occurred the Citizens' Bank had suspended operations and its affairs were in charge of a National Bank Examiner. When a national bank is insolvent and its affairs have been taken charge of by the Comptroller of the Currency or his representative,

it may not lawfully pay out any of its notes, discount notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to it, and to deliver special deposits. 12 USCA § 133. But the insolvency and suspension of a national bank, with or without the appointment by the Comptroller of the Currency of a receiver to wind up its affairs (12 USCA § 191), do not work a dissolution of the corporation or disable it from entering into transactions not forbidden by law. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 20 L. Ed. 840; Central National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Chemical National Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595. It is not unlawful for a failed national bank to be the payee or beneficiary of obligations of its stockholders to pay to it or its liquidating agent funds required to make its assets sufficient to discharge its liabilities without assessments against its stockholders being resorted to. Mr. Fletcher's relation to the transaction in which the instruments sued on were given was not such as to make the testimony in question inadmissible by reason of his death.

Assignments of error based on the court's refusal to instruct the jury to return a verdict in favor of the plaintiff are not sustainable, as there was evidence to sustain a defense set up, and to prove that at the times the instruments sued on were acquired successively by the Georgia National Bank and by the New Georgia National Bank each of those corporations was informed of the existence of a defense set up or was put on inquiry which, if it had been followed up, would have led to a knowledge of the existence of such a defense.

The record showing no reversible error, the judgment is affirmed.