### NATIONAL METROPOLITAN BANK OF WASHINGTON

v.

### The UNITED STATES.

No. 235–61.

United States Court of Claims.

May 14, 1965.

Karl Riemer, Washington, D. C., for plaintiff. Pehle, Mann, Riemer & Luxford, Washington, D. C., of counsel.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer for defendant. C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

Before LARAMORE, Acting Chief Judge, and DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

This is an action for refund of income taxes. Plaintiff bank was in business for many years, but on May 20, 1958, was placed in voluntary liquidation and assigned all its assets to the American Security and Trust Company, which assumed all its liabilities. During subsequent liquidation, the affairs of plaintiff

were in the hands of a Liquidating Committee. Plaintiff itself did no banking business after May 20, 1958.

In August, 1958 the District of Columbia assessed plaintiff for gross receipts tax in the amount of $49,428.68 for the period July 1, 1957 through May 20, 1958, which was the day that plaintiff went out of business. The payment of the District of Columbia gross receipts tax was actually made by check drawn by the American Security and Trust Company on August 7, 1958. Section 162 of the Internal Revenue Code of 1954, 26 U.S.C. § 162 (1958 ed.) permits the deduction of " * * * all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Defendant contends that plaintiff bank cannot initially establish that it, not its successor, paid or incurred the expense which it claims is deductible; that taxpayer ceased to exist for tax purposes on May 20, 1958, and could not file a tax return or sustain a net operating loss thereafter for a carryback to 1956.

Plaintiff is entitled to claim a deduction somewhere for the payment of the tax of $49,428.68 to the District of Columbia for its gross receipts for the period July 1, 1957 through May 20, 1958, when plaintiff went out of the banking business. Although plaintiff bank agreed to then assign all of its property and assets to the American Security and Trust Company on May 20, 1958, plaintiff did not thereafter become a mere corporate "shell," or cease to exist as alleged by defendant. On that same day, the shareholders of plaintiff bank voted to place it in voluntary liquidation under the provisions of §§ 5220 and 5221 of the United States Revised Statutes, 12 U.S.C. §§ 181, 182 (1958 ed.) to take effect at 5 p. m. on May 20, 1958. Three persons were, by the same action, appointed a liquidating committee of the bank with full authority to act for the bank in all matters during liquidation. Upon due notice to the Comptroller of the Currency of this action, the Comptroller replied that he intended on May 21, 1958, to report National Metropolitan in voluntary liquidation as of 5 p. m., May 20, 1958. The Liquidating Committee continued to act until June 9, 1959, when it filed its final report with the Comptroller of the Currency. Until that time, plaintiff bank continued in legal existence at least for tax purposes. It was neither insolvent nor in the hands of a receiver and was capable of suing and being sued for the purpose of winding up its business until its affairs were completely settled. National Bank v. Insurance Company, 104 U.S. 54, 26 L.Ed. 693 (1881); Chemical National Bank of Chicago v. Hartford Deposit Company, 161 U.S. 1, 16 S.Ct. 439, 40 L.Ed. 595 (1896); Rosenblatt v. Johnston, 104 U.S. 462, 26 L.Ed. 832 (1881).

The Treasury Regulations concerning deductibility of taxes provide:

"§ 1.164—1. *Deduction for taxes.* —* * * taxes imposed by the United States * * * or a political subdivision [thereof] * * * are deductible from gross income for the taxable year in which paid or accrued, according to the method of accounting used in computing taxable income. * * * In general, taxes are deductible only by the person upon whom they are imposed. * *"

When the gross receipts tax was imposed upon plaintiff bank by the District of Columbia it was no longer in the banking business, but it was still a legal entity against whom the District could have proceeded to enforce collection of the tax which was assessed against the bank after it went into liquidation. The primary obligation for payment of the tax to the District remained upon plaintiff as long as it continued in legal existence. Although the American Security and Trust Company had agreed to assume all of plaintiff bank's debts, liabilities and obligations, its payment of this tax was made for and on behalf of plaintiff bank. Defendant relies mainly on Citizens National Trust & Savings Bank of Los Angeles v. Welch, 119 F.2d 717 (9th Cir. 1941), but in that case the action was brought by the *assignee* national bank;

the items claimed had been disallowed as deductions in computing the net income of the *assignor* state bank, *but had been allowed for the assignee national bank.* There is nothing here before us to indicate that the assignee American Security has ever claimed or received the benefits of this tax deduction. The court, in the above cited case, in rejecting the contention that plaintiff assignee national bank paid the items as the agent of the assignor state bank, noted that the state bank did no business after the consolidation and concluded at page 719, "* * * Obviously a bank which is doing *no* business cannot be doing business by or through an agent." This statement is not applicable to the facts in our case. Plaintiff bank was not doing business *as a bank,* but its legal entity continued as long as it continued in liquidation.

Under the agreements for purchase of assets and assumption of liabilities between plaintiff bank and American Security, plaintiff bank agreed that immediately after the closing date of May 20, 1958, when it would cease doing business as a bank, "* * * it will proceed to complete its liquidation by distributing its assets and *thereupon* dissolve." [Emphasis supplied.]

Section 6012 of the 1954 Code, 26 U.S.C. § 6012 (1958 ed.) is entitled *"Persons required to make returns of income,"* and subsection (b) (3) thereof provides:

"(3) *Receivers, trustees and assignees for corporations.*

"In a case where a receiver, trustee in bankruptcy, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns."

Defendant concedes in its brief that this section "requires that the existence of a liquidating corporation be continued for federal tax purposes on the same basis and in the same manner as in the past, as long as the corporation's affairs are being settled and its assets are not actually distributed to the shareholders of the corporation." We accept this construction of the statute, but we do not accept the distinction attempted by defendant in arguing that plaintiff bank on May 20, 1958, became a corporation *de facto* dissolved. Plaintiff bank remained in the process of liquidation until the filing of the final report of its Liquidating Committee on June 9, 1959, effective as of May 29, 1959. Accordingly, we find that the payment of plaintiff's District of Columbia 1958 tax by American Security on August 7, 1958 was for and in behalf of plaintiff, which remained in legal existence for tax purposes during 1958 and until its liquidation had been completed.

We turn now to the actual merits of the claim before us. On August 14, 1958, National Metropolitan filed a Federal income tax return for the period January 1 through May 20, 1958, and claimed the tax payment of $49,428.68 to the District of Columbia as a deduction. By an appropriate statutory notice of deficiency, the Commissioner of Internal Revenue determined that this deduction should be disallowed. National Metropolitan challenged the correctness of this determination by petition to the Tax Court of the United States, where the case is still pending.

Later, on or about June 14, 1960, National Metropolitan filed another Federal income tax return claiming the same deduction of $49,428.68 for gross receipts tax paid to the District of Columbia as that claimed in the return filed on August 14, 1958, which is before the Tax Court. However, the June 1960 return was for the period May 21 through December, 1958 with no gross income reported because plaintiff was not in the banking business during that period.

National Metropolitan then, about June 15, 1960, filed a claim for refund of income taxes paid for the year 1956. The claim as finally revised was in the sum of $25,702.21, based upon the deduction of a carryback to 1956 of the net operating loss sustained by National Metropolitan for the period May 21 through December 31, 1958. Upon denial of this claim for refund, National Metropolitan brought this action.

During the years prior to 1958, National Metropolitan used the cash receipts and disbursements method of accounting and filed its tax returns on a calendar year basis.

Clearly, the taxpayer has filed two alternative and inconsistent 1958 Federal income tax returns, the first for the period January 1 to May 20, 1958, when it went out of business, and the second for the period May 21, 1958, through December 31, 1958, when the liquidation of its affairs was in the hands of the Liquidating Committee, and its assets, liabilities and business had been assigned to the American Security and Trust Company. Both returns claim the same deduction of $49,428.68 by reason of the payment by plaintiff to the District of Columbia on August 7, 1958, for gross receipts taxes.

In the Tax Court, plaintiff has an action pending to challenge the determination by the Commissioner of Internal Revenue that the deduction claimed in the first return should be disallowed. In this action, defendant in its Response to Plaintiff's Post-Argument Memorandum, states that although briefs have not yet been filed:

"* * * it is our understanding that the Commissioner of Internal Revenue will defend that action on the same grounds as set forth in the Government's brief herein: *viz.*, that a cash basis taxpayer may not deduct an expense which it does not pay * * *, and which was not in fact paid until after it had ceased to exist for tax purposes * * In addition to those contentions, we also noted in our brief * * * that

even if taxpayer could here establish that it is entitled to the deduction claimed, it still could not be granted the relief sought; a refund of tax. * * * *"

In this court, plaintiff sues for refund based upon the same deduction, but would apply the deduction not on the computation of its 1958 taxes, but as a carryback to net operating losses sustained in 1956. Defendant maintains that the second return, filed for the latter period of 1958, was then a nullity because plaintiff bank was *de facto* dissolved and liquidated on May 20, 1958, and therefore *"it correctly filed its final return for the 'short period' to and including May 20, 1958."* Thereafter defendant contends, plaintiff could not realize taxable income or pay deductible expenses.

In the Tax Court, the National Metropolitan Bank opposes the contention of the Commissioner that the District of Columbia tax of $49,428.68 is not deductible for the period January 1 through May 20, 1958. However, plaintiff here in its Post-Argument Memorandum concedes that it cannot deduct the District of Columbia tax twice, and that if it prevails here in this court, it will accept the Government's position in the Tax Court. Plaintiff also concedes that if it prevails in the Tax Court, it would consent to a dismissal in the present case, but that this occasion has not arisen and therefore, economy of judicial effort would be ill-served by postponing decision of this case until after decision of the Tax Court case.

It would appear that neither party has, up to now, evinced much concern about economy of judicial effort. We are confronted with two variations of the old "Shell Game," where a dried pea is placed under one of two walnut shells by the prestidigitator and the hapless victim is asked to determine which shell covers the pea. The variations here are that, whereas plaintiff says that the pea must be under one shell or the other, defendant says that there is no pea, and even if there is, it is not under either shell.

Although plaintiff has the legal capacity and right to sue on its claim, we conclude that it is not entitled to recover in this court. Plaintiff has no legal right to split a tax return for its calendar year 1958 into two returns, one from January 1 to May 20, and the second for the period May 20 through December 31, 1958, and claim the same deduction in each return for a single payment of District of Columbia gross revenue taxes. Obviously, plaintiff has only one legal claim for this deduction as a basis for action in one court. It cannot, by filing two returns containing the same deduction, claim a 1958 tax credit in the Tax Court and a 1958 loss carryback to 1956 in this court.

Plaintiff used the cash receipts and disbursements method in keeping its books, and adopted the calendar year as the taxpayer in filing its tax returns, except for the year 1958 when it filed the two different returns for the two separate periods. The claim before us is based upon a carryback to 1956 of a loss for the period May 20, 1958 through December 31, 1958. The return for this period stated the payment, during this period, of the District of Columbia gross receipts tax as a deduction. Since plaintiff bank was out of business during this period and reported no income for May 20 through December 31, 1958, plaintiff claims the loss carryback to 1956 for this period. However, we are unable to make any determination as to whether taxpayer sustained a net operating loss *for the calendar year* by virtue of the deduction claimed for the second period May 20 through December 31, 1958, without first ascertaining what net income

taxpayer realized between January 1 and May 20, 1958, and there is nothing in the record before us to supply that information.

Section 441 of the Internal Revenue Code of 1954, 26 U.S.C. § 441 (1958 ed.) requires that taxable income be computed on the basis of the taxpayer's *taxable year* (in this case the calendar year) unless under § 443 of the Internal Revenue Code of 1954, 26 U.S.C. § 443 (1958 ed.) the taxpayer *is not in existence* for the entire taxable year, when taxpayer can file a return for a period of less than six months. By the very same conclusion we have reached that plaintiff bank was authorized to sue because it continued in legal existence during liquidation for the year 1958, we must also conclude that plaintiff bank was not authorized to file the short period return for the period May 20, 1958, through December 31, 1958. The general rule for the taxable year of deduction is stated in § 441 of the Internal Revenue Code and provides that the amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. In this case, the taxable year was the calendar year 1958, since plaintiff bank remained in legal existence during the process of liquidation and dissolution from May 20 through December 31st of that year and beyond.

Section 6512(a) of the 1954 Code, 26 U.S.C. § 6512(a) (1958 ed.) provides that if a taxpayer files a petition with the Tax Court, no credit or refund of income tax for the same taxable year shall be allowed or made and no suit by the taxpayer may be maintained in any other court.[1]

1. "Sec. 6512. *Limitations in case of petition to Tax Court.*

"(a) *Effect of petition to Tax Court.*

"If the Secretary or his delegate has mailed to the taxpayer a notice of deficiency under section 6212(a) (relating to deficiencies of income, estate, and gift taxes) and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year, of gift tax for the same calendar year, or of estate tax in respect of the taxable estate of the same decedent, in respect of which the Secretary or his delegate has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except—

\* \* \* \* \*

"(The exceptions in the statute are not applicable to the present case.)"

Defendant has argued that even assuming that taxpayer did pay its District of Columbia gross receipts tax, and did remain in existence for tax purposes beyond May 20, 1958, "only the Tax Court could treat the 'short period' return as filed for the entire calendar year and adjust taxpayer's deficiency accordingly." We have reached the same conclusion because we have first determined, as essential to this ultimate finding, that plaintiff bank did pay its District of Columbia gross receipts tax and did remain in existence for tax purposes beyond May 20, 1958. Plaintiff has shown no basis upon which it can be granted a tax refund for the year 1956 based upon a loss carryback from 1958.

Plaintiff's petition is dismissed and judgment is entered accordingly.